and we'll move to the next case which is Milligan v. GEICO. Mr. Keith Altman will begin. Your Honors, before I begin, if I may ask respectfully, I am severely visually disabled and if I might be granted a few extra minutes on my rebuttal because I'll have to have a colleague with me to take notes and share them with me because I'm unable to effectively write. Sure. Okay, thank you, Your Honors. I'd like to begin by, may I please the Court, I'd like confused which is what is the standard way of calculating the damages associated with a new vehicle that was told? They don't dispute that the vehicle in question was new. They don't dispute that the vehicle was totaled. Regulation 64 makes very clear that for a new vehicle in the same model year, you find an appropriate purchase price of a new vehicle less any applicable deductible and an adjustment from mileage. Well, this is Judge Lynch, Mr. Altman. I think everyone agrees that Regulation 64 controls here. The question that I have is the same one I had for you the last time you were here, which is what do you think is the right way to do this or maybe what do you think is wrong with what was done? I think that as I read your brief, your position is that Ms. Milligan is entitled to the full sticker price. That's what you say on 19 to 20 of your brief and again at 23 of the vehicle subject only to the statutory depreciation allowance. Is that what you're asking for? Your Honor, in the absence of any other particular evidence, the sticker price is certainly a reasonable number to work with. What is definitely incorrect, though, is what the defendants did because they did not compare the purchase price of new vehicles and make an adjustment. They took used vehicles. Yes, you see, this is what what intrigues me, though. It seems to me there are two different ways of looking at this. If what is wrong, let me give you a hypothetical and maybe that'll clarify it. Suppose Geico hired some outfit like CCC to go and survey Suffolk County dealers and find out what they actually sold cars for. And they found the exact make and transactions in three different dealerships with the exact same make and model, the exact same options. And all of them fresh from the factory with only six miles on the odometer. And one said we sold this for 15% below sticker price. One said we sold it for 10% below. One said we sold it for 8% below or something like that. Is it your position that that would be inappropriate because there should just they should just look at the sticker price? No, your honor, I think that might be a perfectly appropriate way to do things. Well, you see, what troubles me then is why didn't we send if the error is not that the sticker price as a matter of law is the right answer, but that what's what was done wrong here is a fact specific thing about this particular appraisal that the cars weren't new enough and they weren't identical enough, then why didn't this why wasn't it appropriate to send this to arbitration by a panel of experts under the appraisal system? And the last time we were here, the reason you got this far and didn't get arbitration is because when I asked you that question, you said the answer was the sticker price. Well, your honor, that was the only evidence that is available at this time of what's a reasonable price. You know, nobody, the company itself, CCC, which it was obligated to do, never researched the selling price of new vehicles, et cetera. They simply went with used vehicles. There are multiple. And that's a question of fact, which is which is the appropriate valuation to use of a new vehicle to use the sticker price? I would think that absent any other contrary information, the sticker price is certainly a reasonable price to use. But do you do you challenge the accuracy of the MVR in this case? Yes, because it was done the wrong way instead. Well, for two reasons. Number one, instead of starting with new vehicles and working down, they started with used vehicles and worked up at one of the most egregious errors that they made. Regulation 64 says you adjust my you adjust fifty three cents a mile for every mile on the vehicle. When they did their valuation and they used used vehicles, they made an adjustment up to account for the fact that they were more miles on the vehicle than what Miss Milligan had. The problem is they only used 20 cents a mile. Interestingly, had the had CCC used fifty three cents a mile, which is the rate of adjustment required under the regulation, it would come out to almost the same number. You know, they would have been almost the same numbers taking the sticker price and going fifty three cents a mile down. But they didn't do that. To get back to Judge Lynch's question, then, if indeed the challenges to the accuracy of the MVR, is this something that that that should be arbitrated? Your Honor, they didn't they didn't ask for appraisal in a timely manner. And that was that was what was raised before this court and rejected by this court. And this court said instead that the reason it doesn't go to arbitration is because what you are raising is a question of law, not a question of fact. I mean, it certainly seems to me that it might be a reasonable way of determining the market value of a new car to look at the values of almost new cars, if those were the closest that could be found. And then experts could extrapolate back by whatever means. And that would give you some idea of what the reasonable market value of a car is at new. But that doesn't have to go to arbitration. You know, we asked them, we listen, we pointed out to the defendants, to Geico, that you calculated this the wrong way. And Geico said pound sand, this is how we're going to do it. And, you know, they had an opportunity to do that. But there was no requirement that this be there was no requirement that this be arbitrated. Absent any other information to the contrary, though, it would certainly be reasonable to say that the sticker price of a vehicle is, you know, is an appropriate value. I believe that it might be an appropriate value. But, you know, in in recent weeks, we've been seeing articles in the press that consider it newsworthy, that the actual price of new vehicles is now approaching the sticker price. And that's because of the supply chain issues and all these other in the marketplace. Or even exceeding. So that that is to me an indication that the sticker price is not ordinarily what people pay in the actual market for actual vehicles. So I'm just, you know, I'm just wondering, why is it not an appropriate method? Now, maybe you're right, that in this particular case, the appraisers got it wrong, because they did a poor job of identifying identical vehicles or something like that. I'm having a little trouble understanding how that can turn into a class action. But that's not before us. If what they did was, these particular folks who went out and did this, on this particular case, used vehicles that weren't new enough, or weren't identical enough. That's case specific, isn't it? It is. And it's all questions of fact. But Your Honor, Regulation 64 is clear. You must use a new vehicle. They did not do that. No, you must find the reasonable price of an identical new vehicle. There could be a lot of different ways that are appropriate ways of trying to figure that out, as to what actually happens in the marketplace, not what the manufacturer advertises as the suggested retail price to put on a sticker. I understand, Your Honors, but I still think that they did not use new vehicles. They used used vehicles. And then they added in 20 cents a mile when the regulation was clear that the adjustment is 53 cents a mile. So there is no question that what they did here did not value the value that is the number. That's a question of fact that could be determined by the experts. It didn't require that it go to arbitration in order to do that. That could be through the normal course of litigation. There'd be discovery. An expert would come in and say, I think the vehicle is worth this. And their expert might come in and say the vehicle is worth that. But they would have to start with the premise that you're dealing with a new vehicle, not a used vehicle. Thank you, Mr. Alden. We've given you a little bit of extra time and we'll hear from Ms. Corman and other counsel. You have two minutes rebuttal, but you wanted a little extra time. Will two minutes do it for you? I believe so, Your Honor. That would be helpful. Thank you so much. All right. Ms. Corman. Good afternoon, Your Honors. My name is Cheryl Corman, and I represent the Appellate Geico in connection with this matter. This is the first time sitting in this conference room right now where plaintiff has articulated that they're focusing on any problems with the actual market value report. And in fact, the positions taken in connection with the original appeal was that they weren't having any issues with the fact that it was a market valuation that was done. Just the fact that a market valuation was not appropriate to be done. So the shifting arguments I find a bit frustrating. But also, if we look at the plain language of the statute of C-3, you can't just look at the one word new as if that governs the entirety of the inquiry. It's a reasonable purchase price to the insured on the date of the loss of a new identical vehicle. On the date of the loss, this was not a going to go to the dealerships and we're going to find brand new pristine vehicles that are on the lot would not be an equivalent comparable substitute. Well, Ms. Corman, I'm not sure that's right. It is the price. The regulation says it's the price of a new vehicle on the date of the loss, not that it's the price of what this vehicle would be worth itself on the day of the loss. The whole Yes, it's replacement value. And so you have to look at what on that date. Now, maybe the market has changed. It's not necessarily the market price of the price that she paid for it a couple of months before, even if it's rolling right off the lot. I mean, the question is, what is it? What is it going to be worth to replace that vehicle today in the marketplace? Exactly. I disagree with that. I do not disagree with that. But so then so then you would have to look at what a new car would be worth, not a car that's as old as the one that got wrecked. But you know, no, your honor, if you're going to you have to give fair market value, the actual cash value, which is what it would cost to replace the vehicle with a comparable item. No, no, no, no, no, no, no. Wait, excuse me. I thought the whole point of regulation 64 is that it's you know, when you take the car off the lot, it depreciates immediately in value. Right. We all know that. Then in a very short time, it gets totaled. Regulation 64 says you must now look to find what it would cost to buy a new car at the time of the loss, not to buy a car that has depreciated as much as the one that she was driving when it got wrecked. I do not read it that way, your honor, to a reasonable purchase price to the insured on the date of the loss. So on the date of the loss, what would it cost me to go find you're leaving out of a new identical vehicle? No, it's new, not in terms of the fact that it's brand new off the showroom. It's a different vehicle to the insured. That's that's the way we have to say it's a new used car. That's what you're saying. It's a new car of comparable value. You're saying it's another car. New means another car of comparable value because that is identical. The regulation says a new identical vehicle, identical, meaning it's a new identical vehicle. And then you can make some adjustments for depreciation. But it doesn't say a comparable vehicle. Well, if, for example, this this this car was purchased in, let's say, November of 2014, and then by the time it is totaled, it's six months later in May of 2015. The value of that car with the six months wear and tear is not the equivalent of a new pristine. Yes. And that's why the New York authorities wanted to change the rule. And they made a specific regulation that said if it's almost new, if it's within a certain period, you have to give the person what it would take to buy a new car at this time, not to buy one that is two months old. Otherwise, I don't see why you'd even need this regulation at all. It would just be the standard situation where you look at the value of the property at the time of the loss. But this regulation seems to me to change that. Well, perhaps C3 is a little bit more stringent than the others, but they all look to a market analysis. Right. The allegation here is that by doing a market analysis, that it was the wrong way to approach this. That's the claim here. That's what was pleaded. We're not dealing with any allegations as to the specifics of this individual fair market value. And CCC, their methodologies are approved by the DFS. They don't just make these things up. So the methodologies are absolutely things that are done throughout the industry. And what they purported, I thought what they purported to do was to calculate, albeit by extrapolation from the market prices of the vehicles that they found, to extrapolate back to what it would cost to buy a new car. They have to take into account the condition of the vehicle. So they go to back to the dealerships and they see what is the dealerships have that have comparable features and comparable mileage if it's available, but you're never going to be able to go back and go find an exact identical vehicle. So there has to be some kind of market analysis. And if you look at the whole provision, the whole provision is geared towards looking at other vehicles, other market analysis, so you can then reimburse or the person should be able to go get a comparable car. And if you look at the right of recourse provision, it specifically says, we're going to offer you this value. If you can't get a comparable car for that amounts of money, come back to us, and then we'll go back and we'll either find you a vehicle that's comparable or not. And C4 is specifically referenced back to C3. So it's absolutely an appropriate market analysis. If we're going to get into the specifics of this particular, yes. If I could just integrate the moment to go back to Judge Lynch's comment a few moments ago, why would this regulation be necessary? I mean, the economic terrain that you are describing is what it would have been before the regulation was created. And so what is it that this regulation achieved or accomplished for a consumer? Well, if you would think that the value that's going to be given under C3 is likely going to be a little bit higher than the other valuations, as evidenced by the fact in that last sentence, where it references back to the other valuations. But you have to look at this all as one larger scheme, where you're trying to just determine what the appropriate market value is. But you're never going to go find an identical vehicle. And the whole purpose of insurance law, especially in New York, is to just to compensate for the loss, not to provide a windfall. And if somebody is going to go and be able to get sticker price for a car that's upwards of 10 months old, that would be a windfall, that would not be appropriate compensation. What was the stated legislative objective here? Or regulatory objective? To enable the insureds to be able to get a comparable vehicle. And so we give them the money so they should be able to go if their vehicle is 10 months old, they should be able to go buy a 10 month old vehicle with comparable features. So they are made whole, not so they get windfall, because they're and walk away with sticker price, when to get the same exact vehicle, they'd be paying far less than that. And we all know that even as soon as you drive a vehicle off the lot, it's going to depreciate. And this is not supposed to be a 10 month old, this regulation only applies to vehicles that are 90 days old or less, right? No, Your Honor, it applies. There are two ways to look at what a current model year is. One is a vehicle that has just been introduced and not superseded by a subsequent model, or a vehicle of a prior model year that's only been on the road for 90 days. So there are two mechanisms to do it, only one of them. Okay, but the idea is, this is a new-ish vehicle that this regulation applies to. If this was a five year old vehicle, maybe another way to ask the question, if this vehicle were five years old, is there anything different about what the insurance company would do under that circumstance, and what you are saying it should do to a vehicle that is current in the model year, or 90 days out from a new model year? Well, the difference would be you would look under the other provisions, which would really look more towards a substantially similar vehicle. That's the language that's used there. So at the end of the day, the goal is to find vehicles that are comparable. Now, in this situation, perhaps it's likely that you can go to a dealership and find vehicles that they can look at that are comparable on the lot, because we're dealing within that same model year. But at the end of the day, the allegations here are that it was inappropriate to use a market analysis. The allegations here are not that there was anything particularly wrong with the market valuation that was done here. Well, I understand that. That's the problem I was having with Mr. Altman, was that I thought that he had explicitly said before, the last time this case was here, that he was looking for sticker price, and that his brief seemed to be saying the same thing now. And I see your point that it sounds as if he has now shifted to the idea that you didn't find close enough comparators for what you're looking for. Yes. But that always, you know, I never had the idea that you were saying that just as if the vehicle was 10 years old, and therefore you'd be looking for comparable 10 year old vehicles, that this regulation does not say that in the case of a car that is relatively new, that is one of this model year, or one of just within 90 days superseded model year, that you have to pay them for what it would actually cost in the market, not the sticker price, but what it would actually cost in the market to buy a new car, not to buy a 10 month old car, or a three month old car, or a two week old car, but to replace it with a new car, what would it cost? I think that reads the words date of loss out of the out of the No, it doesn't. It's what would it take to get a new car? What it does, I suppose your argument, I suppose should be that a new car, we should take to mean just another car. It's new to the customer. It's not a new car, actually, but a used car. And if the legislature wanted to give an identical vehicle by sticker price, they could have I'm not talking about sticker price anymore, Mr. Altman is. I'm asking you, why do you think that the legislature didn't just not have this at all, really? Because what the methodology that you're suggesting is basically the same as what you do with an old car, you're looking for what it would to buy a used car that is like this one in the marketplace, as opposed to buying a new car. And it just seems to me in the world of cars, it's just being new and used. So that new car has a kind of significance in that marketplace, doesn't it? But it's also not limited to this particular, when you look at the new car provision, when you look at C3, they also reference back that the other methods might be appropriate as well. So it's not, you can't just look at this in a vacuum, there's an interplay among all of the provisions as evidenced by the fact that the very last sentence of C3 references back the fact that we might be looking at those other methodologies, again, all of which have been approved by the superintendent of the Department of Financial Services at this point. Let's hear now from Mr. Zayud Hussain. Thank you very much, Ms. Paul. Thank you, Your Honor. May it please the court, Samir Deghasan on behalf of defendant CCC. So regardless of how the court addresses the question of Regulation 64, there's simply no basis for CCC to be a defendant in this case. And that's the point that Judge Lynch actually made last time this case was here. He asked plaintiff, what is the theory that brings CCC into this case and suggests that plaintiff should really reconsider whether CCC should be a defendant. Here we are years later, and the same problems apply. CCC is simply a service provider to GEICO. In accordance with its agreement with GEICO, CCC put together a report that accurately determines the fair market value of plaintiff's car. Now, plaintiff may believe that Regulation 64 entitles her to more than fair market value, but there's no cognizable claim against CCC for simply fulfilling its role as a service provider and giving GEICO the information that GEICO requested. That the only thing that CCC is asked to do to determine fair market value of the car on the date of its loss? That's clearly what CCC is doing as the... And you're not instructed to determine the cost of a new identical vehicle? I mean, what is the mandate? Well, that's not in this record, Your Honor, but I mean, the question of whether or not we're instructed to comply with Regulation 64, I mean, that's a question ultimately for the insurer and the insurer's legal advisor. It's clear what we did, which was provide fair market value. On the first page of the valuation report at the appendix at 546, we say this is a opinion as to the value of the lost vehicle. And then we explain in detail that we're providing fair market value. And then even at the end, and this is at the appendix at page 561, we say comparable vehicles used in the determination of the vehicle value are not intended to be replacement vehicles, but are reflective of market value. So it's very clear what this report is doing. And so I think it's very clear that GEICO must have asked CCC to provide a report that is inaccurate. In fact, plaintiff has conceded in this court that $46,000 does accurately reflect fair market value. That was at page four of their brief last time in this court. They expressly conceded, I think precisely as Judge Lynch said, the purpose of avoiding the appraisal provision, that their claim here was not challenging the valuation. They concede CCC got it absolutely right as to fair market value. It just should never have been fair market value at all. It should have been the price of a brand new vehicle, the sticker price. And so that's essentially where we are in this case now, Your Honor. There's no dispute. Is there such a thing? So what you were asked to do and what you did was to determine the fair market value of a car like the one that was lost as of the time it was lost. Is that fair to say? That's fair to say, Your Honor, yes. So you were not asked to and you did not attempt to extrapolate from that what it would cost, or from any other data for that matter, what it would cost to buy a brand new identical vehicle. That wasn't your task. It's clear that wasn't our task because the report itself says exactly what it's doing and it disclaims doing that. That's page 561. It says we are not doing that. Correct, Your Honor. And so that's why you sort of have these two highly strained theories that try to bring us in this case. One is this third-party beneficiary breach of contract theory. As we explained in our briefs, New York law imposes incredibly stringent requirements on third-party beneficiary claims. The contract must both reflect an intent to permit enforcement by third parties and there must be a direct, not incidental benefit. And here, there's no reason to think that GEICO and CCC would want plaintiff to enforce this service agreement. I mean, that really has breathtaking implications when you think about it because it would mean that essentially all of GEICO's insureds could come into court and enforce this agreement that GEICO itself has not even tried to enforce against CCC. So there's no New York case that looks anything like that. This has historically been a very narrow doctrine and there's no reason to believe that GEICO and CCC would have wanted, you know, potentially thousands of people to come into court and enforce this agreement. So that alone is enough to dispose of the third-party beneficiary claim. And then on the GBL claim, Your Honor, plaintiff concedes that this practice was fully disclosed. I mean, there's no doubt that, as I've explained, we'd say in the valuation report exactly what we're doing. We say it on page one. We say this is our opinion about the value of the loss vehicle and then we even disclaim that we're doing what plaintiff says Regulation 64 requires. And New York law is absolutely clear that when you have a fully disclosed practice like this, that cannot be a violation of GBL 349 as a matter of law. We cite multiple cases in our brief that affect. And that really is the end of the case, Your Honor. They point to this one statement, which I think again just shows how thin their case is to CCC is, which is, you know, that Regulation 64 concerns vehicle value. No one disputes that statement. It's absolutely true. And in the context of a report that explains exactly what we were doing, there's nothing misleading about that statement. Thank you very much. I was going to say I'm happy to answer the Court's questions. It's not, you know, relevant to our claim necessarily, but if the Court has questions as to the meaning of Regulation 64, I'm happy to answer them. Otherwise, I'm happy just to rest on the papers. Thank you, Mr. Diggerson. Mr. Altman has reserved two minutes plus two minutes. Your Honor, just to raise some of the things, to suggest that we never said there was anything wrong with the market valuation report is an absurdity. The whole complaint is based upon the fact that the defendants used the wrong methodology for calculating the value of the vehicle. And one of the things that the defendants have not explained is, you know, one simple thing is why they added 20 cents a mile when the regulation clearly says 53 cents a mile was the appropriate number to use for an adjustment. Second of all, we have always stood upon the fact that, you know, in the absence of any evidence to the contrary, the sticker price of the vehicle should be used. Here, it is clear for both GEICO and CCC, they never did what Regulation 64 required. And the suggestion by sister counsel that the word new means just new to that person, frankly, is absurd, because the whole point of C4 is talking about what do you do with vehicles in a current model year? Clearly, if the word new means that, then the word new would be in C1, C2 as well, because those are all new vehicles to the all new vehicles to the person. So clearly, the word new literally means the word new. Now, they suggest that it's a windfall, but it's not really a windfall. They want to, you know, sister counsel wants to double dip, she wants to say the two month old vehicle should be depreciated because it's a two month old vehicle. And then on top of that, we're going to deduct 53 cents a mile. Well, the regulation clearly anticipated that there should be some depreciation and determined it's 53 cents a mile is the appropriate value to use. So I think the court clearly understands that this was supposed to be a new comparable vehicle, a new comparable vehicle with the depreciation of 53 cents a mile. There's no explanation from the defendants why they use 20 cents a mile. Now, as far as CCC's argument that they fully disclosed everything, they also fully say they comply with Regulation 64. And clearly, they don't. It's not even questionable. There was the both defendants have admitted they did not use the methodology of Regulation 64. C3, you know, C3. Well, excuse me, Mr. Altman, can you tell me, I still don't understand why CCC is in this case, they're contracted with GEICO to provide a particular report. They say in so many words, exactly what they're doing, and how they're doing it, they expressly disclaim that they're doing what you think they ought to do. But it's not that they ought to do it, because they have an independent obligation to do that. It's because they have an obligation to do what they were hired to do, right. But they also have an obligation when they say, I mean, two things, they say that there's no intent here for a third party beneficiary. There was language in the report that clearly is only directed at the consumer. You know, the fact that they are an expert and have been doing this a long time, why would that language be there for GEICO's benefit? It was clearly intended. And CCC knew that this report that they were giving to GEICO was going to be shared with the consumer as the basis for why the value vehicle is valued in whatever it is. Now, in terms of they also say comply with regulation 64, which is in fact not true. They explicitly counsel just conceded that they did not find the value of new identical vehicles as required by the regulation. So now you have a conflict within the evaluation report that says, well, we did it this way, but we also complied with regulation 64 in a document that clearly was intended to be shared with the consumer and relied upon. And how do they get it both ways? We complied with regulation 64 when they didn't. How is that not an unfair business practice? They're supposed to be the experts. They proclaimed that. They said it in this report to make consumers believe the valuation that they came up with, but they're not complying with regulation 64. So that's saying, you know, I'm doing it, you know, think about it. I'm doing it this way and it complies with the law when it doesn't. And the consumer is supposed to figure out that they're not doing it in compliance with the law. I just don't think that flies. Okay. Thank you very much. Okay. Thank you, your honors. Thank you for the accommodation. I appreciate it. We're grateful for your argument as we are with respect to the other.